UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, | ) |
| Plaintiff, | ) Civil Case No. 3:24-cv-01175 |
| v. | ) MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE |
| JOHN DOE subscriber assigned IP Address 69.247.13.155, | ) |
| Defendant. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff hereby respectfully submits this Memorandum of Points and Authorities in support of its *Ex Parte* Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference.

**I. INTRODUCTION**

Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") is the owner of original, award winning motion pictures featured on its brand's subscription-based adult websites. Unfortunately, Strike 3's success has led users on the Internet to illegally infringe its works on a very large scale. Indeed, Strike 3's motion pictures are among the most infringed content in the world. *See* Declaration of Jorge Arco, ("Arco Decl."), attached hereto as Exhibit "A."

Strike 3, using its proprietary forensic software, VXN Scan ("VXN"), monitored and detected the infringement of Strike 3's content. *See id.* at ¶ 41. VXN discovered that Defendant's IP address was illegally distributing several of Strike 3's motion pictures. *See* Declaration of Patrick Paige, attached hereto as Exhibit "B". This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party with the

1

information necessary to identify Defendant by correlating the IP address with John Doe's identity. *Id.* at ¶ 28. As a result, Plaintiff now seeks leave to serve limited, immediate discovery on Defendant's ISP, Comcast Cable Communications, LLC (Comcast Cable) so that Plaintiff may learn Defendant's identity, investigate Defendant's role in the infringement, and effectuate service. Further impelling expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period of time.[1]

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP. This subpoena will only demand the true name and address of Defendant. Plaintiff will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights.

## II. FACTS

### A. Plaintiff Has a Serious Problem with BitTorrent Infringement

Strike 3 holds title to the intellectual property associated with the *Blacked*, *Blacked Raw*, *MILFY*, *Slayed, Tushy, Tushy Raw, and Vixen* adult brands (the "Brands"), including the copyrights to each of the motion pictures distributed through the Brands' sites and the trademarks to each of the Brand's names and logos. Arco Decl. at ¶ 14. Strike 3 is owned entirely by General Media Systems ("GMS") and has existed since 2015. *Id.* at ¶ 9.

Although it started out small, the Brands' websites now host approximately 15 million visitors each month. *Id.* at ¶ 15. This success is no fluke. Strike 3's philosophy has always been to pay artists and models an amount above that being paid by other companies, focusing on

---

[1] *See*, *e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

2

delivering superior quality films. *Id.* at ¶¶ 17–18. Moreover, Strike 3's motion pictures are known for having some of the highest production budgets of any in the adult industry. *Id.* at ¶ 20.

Because of this commitment to quality, the websites for the Brands have a subscriber base that is one of the highest of any adult sites in the world. *Id.* at ¶ 21. Strike 3 is also frequently the number one seller of adult DVDs in the United States. *Id.* at ¶ 22. Finally, Strike 3's content is licensed throughout the world, including by most major cable networks. *Id.* at ¶ 23. This success has led to numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography." *Id.* at ¶ 24.

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3, and Strike 3 "can compete in the industry, but [it] cannot compete when [its] content is stolen." *Id.* at ¶ 27. To continue to provide value for members, exciting and inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights. *Id.* at ¶ 40.

B. <u>Plaintiff Brings Its Litigation in Good Faith</u>

Strike 3 is mindful of the nature of the litigation and its goal is to not disclose publicly the choices that people make regarding the content they wish to enjoy. Moreover, Strike 3 does not seek to force anyone to settle unwillingly, especially anyone that is innocent. *Id.* at ¶ 34. Therefore, Strike 3 only files strong cases against extreme infringers. *Id.* at ¶ 35. Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content. *Id.* Strike 3 does not seek settlements unless initiated by a defendant or a defendant's counsel. *Id.* at ¶ 36. Additionally, Strike 3 does not send demand letters. *Id.* Finally, although certainly Strike 3 does not believe anyone should

3

be embarrassed about enjoying Strike 3's works (they just need to pay for that right, not steal it), Strike 3 respects the desire of defendants to keep private their choices regarding the content they choose to enjoy. Accordingly, Strike 3 has a policy to: (1) enter into confidentiality agreements with defendants to facilitate resolution of a case; and (2) stipulate to requests by defendants to the entry of orders in litigation to maintain the confidentiality of a defendant's identity. Thus, Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so, and to enforce its rights in a way that is mindful of a defendant's privacy interests.

Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs and licenses. *Id.* at ¶ 38. Strike 3's goal is to deter piracy (and seek redress for its harmful consequences) and direct those who infringe content to the avenue of legitimately acquiring access to Strike 3's works. *Id*.

### III. ARGUMENT

#### A. <u>Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant</u>

"In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint—much less confer with the defendant—without obtaining identifying information from a third party, 'the only potential avenue for discovery is [a court order under] Rule 26(d)(1).'" *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 (D.C. Cir. 2020) (citation omitted). "This issue arises not infrequently in copyright infringement cases where the identity of the alleged infringer is not known." *Malibu Media, LLC v. John Does 1-9*, No. CV 12-12587, 2013 WL 142083, at *1 (E.D. Mich. Jan. 11, 2013) (citation omitted); *NGN Prima Prods. Inc. v. Does 1-24*, No. 13- 37, 2013 WL 1398941, at *2 (E.D. Tenn. Apr. 5, 2013) ("Good cause is often found in cases alleging infringement, unfair competition, or where evidence may be lost or destroyed with time.") (citation omitted).

4

"Courts within the Sixth Circuit require a showing of good cause in order to permit such discovery."[2] *Sojo Prods. Inc. v. Does 1-67*, No. 12-599, 2012 WL 6607838, at *2 (E.D. Tenn. Dec. 18, 2012) (collecting cases). Courts often use the five-factor analysis to determine whether a good cause exists.

> In cases such as the one before the Court alleging copyright infringement against John Doe Defendant, courts generally find "good cause" exists when the plaintiff (1) makes a prima facie showing of a claim of copyright infringement; (2) submits a discovery request to the Court; (3) establishes there is no alternative means to obtain the subpoenaed information; (4) demonstrates a central need for the subpoenaed information; and (5) shows the defendants whose information is at issue have a minimum expectation of privacy.

*Malibu Media, LLC v. John Does 1-31*, 297 F.R.D. 323, 328 (W.D. Mich. 2012) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) (numerous citations omitted)).

"Generally, 'the plaintiff should be given the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Sojo Prods. Inc. v. Does 1-67*, No. 12-599, 2012 WL 6607838, at *2 (E.D. Tenn. Dec. 18, 2012) (citations omitted). All five factors weigh in Plaintiff's favor. As such, Plaintiff good cause exists warranting expedited discovery. *See*,

---

[2] The United States Court of Appeals for the District of Columbia Circuit reversed a decision that denied Plaintiff leave to conduct similar expedited discovery as an abuse of discretion—for several reasons—and in so doing noted that the "good cause" requirement in Rule 26(b) was eliminated by amendment in 2015, which replaced it "with the overarching relevance and proportionality standard[.]" *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 n.2 (D.C. Cir. 2020). It nevertheless concluded that the district court's decision "was an abuse of discretion under any applicable standard," and, therefore, did not reach whether the "good cause" standard "continues to apply under the current version of Rule 26." *Id.* As other courts have recognized, the information sought by the requested subpoena is "clearly" relevant and proportional to the needs of these cases. *See Strike 3 Holdings, LLC v. Doe*, No. 18-2648, 2019 WL 78987, at *3 (S.D.N.Y. Jan. 2, 2019); *see also Strike 3 Holdings, LLC v. Doe*, No. 18-02637 (MCE)(CKD), 2019 WL 935390, at *5 (E.D. Cal. Feb. 26, 2019). While this information is clearly discoverable under Rule 26, the "good cause" factors remain useful as an aid to confirm what "[c]ommon sense dictates," namely, that this limited "discovery should be provided in an expedited fashion." *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2020 WL 3567282, at *8 (D.N.J. June 30, 2020).

*e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 19-11299, 2019 WL 2265171, at *2 (E.D. Mich. May 28, 2019).

> B. <u>There Is Good Cause for this Court to Grant Plaintiff's Motion for Leave to Serve Its Subpoena</u>

> *1. Plaintiff's Complaint Makes a Prima Facie Claim for Direct Copyright Infringement*

To make a prima facie claim for copyright infringement, Plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's Complaint accomplishes this, stating: (1) "Plaintiff is the owner of the Works, which [are] an original work of authorship"; (2) "[d]efendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (3) "[a]t no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise." *See* Compl. at ¶¶ 49–51.

Plaintiff owns a valid copyright in the Works, which are registered with the United States Copyright Office. *See* 17 U.S.C. § 410(c); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019); *see also* Compl. at ¶¶ 43, 46. Plaintiff's prima facie allegations of infringement are attested to by Mr. Arco. *See* Arco Decl. Finally, each digital file has been verified to be a copy of one of Plaintiff's copyrighted works. *See* Declaration of Susan B. Stalzer, Exhibit "C."

Plaintiff has also made a plausible prima facie showing of "copying." "'The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiff's Complaint alleges that Defendant not only downloaded Plaintiff's works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to the BitTorrent

6

swarm. *See id.* § 106(3); *see also* Compl. at ¶ 38. Since Plaintiff's complaint pleads a "plausible claim for copyright infringement," *see*, *e.g.*, *Cobbler Nevada, L.L.C. v. Does 1-15*, No. 15-11871, 2015 WL 4276082, at *2 (E.D. Mich. July 14, 2015), this factor weighs in its favor.

> 2. *Plaintiff Identifies the Limited and Specific Information Its Subpoena Seeks That Is Necessary to Serve Doe Defendant*

Plaintiff's subpoena is limited and only requests "the true name and address of the Defendant to whom the ISP assigned an IP address[.]" *Id.* at *3–4. The information sought in Plaintiff's subpoena is "sufficiently tailored to Plaintiff's limited goal of effectuating service on the Doe Defendant" and thus weighs in favor of granting leave. *Cook Prods., Inc. v. Does 1-9*, No. 16-838 (DJH), 2017 WL 4077014, at *2 (W.D. Ky. Sept. 14, 2017); *Sojo Prods.*, No. 12-599, 2012 WL 6607838 at *2.

> 3. *There Are No "Alternative Means" to Uncover Doe Defendant's True Identity*

At this early stage in litigation, Plaintiff has a limited view into Defendant's true identity, only having access to the offending IP address. People using the Internet are anonymous to the public, but the ISPs responsible for assigning any given IP address "know who an address is assigned to and how to get in contact with them."[3] ISPs' records "are the only available evidence that allows us to investigate who committed crimes on the Internet. They may be the only way to learn, for example, that a certain Internet address was used by a particular human being to engage in or facilitate a criminal offense."[4] Since there is no public registry of what IP addresses correspond to which subscribers, Plaintiff's subpoena is necessary to advancing litigation. *See*, *cf. Strike 3 Holdings, LLC v. Doe*, No. 17-1680 (CSH), 2017 WL 5001474, at *4

---

[3] *Beginner's Guide to Internet Protocol (IP) Addresses* at p. 4, available at https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf.; *American Registry for Internet Numbers Number Resource Policy Manual* at 4.2, available at https://www.arin.net/policy/nrpm.html#four2.

[4] Statement from Jason Weinstein, n.2, *supra*.

7

(D. Conn. Nov. 1, 2017) ("Defendant's ISP . . . is the only entity that can correlate the IP address to its subscriber and identify Defendant as the person assigned the IP address . . . during the time of the alleged infringement.") (citation omitted). "Strike 3 cannot learn the subscriber's identity without the subpoenaed information[.]" *Id.*

"Without filing suit, [Plaintiff is] able to identify the name of each user's ISP and IP address, but only after filing suit and subpoenaing the ISP can copyright owners obtain the actual names and addresses of the user[.]" *TCYK, LLC v. Does 1 - 13*, No. 13-296 (WMC), 2013 WL 4084751, at *1 (W.D. Wis. Aug. 13, 2013). The ISP is the only entity that can correspond a subscriber's identity with his or her IP address, and since Plaintiff "cannot identify [Doe] without a court-ordered subpoena, . . . there is good cause to allow for early discovery." *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 171–72 (S.D.N.Y. 2012).

4. *The Subpoenaed Information Is Necessary to Advance Plaintiff's Infringement Claim*

As previously emphasized, "Strike 3 cannot learn the subscriber's identity without the subpoenaed information[.]" *Strike 3 Holdings*, No. CV 17-1680 (CSH), 2017 WL 5001474 at *4. Plaintiff's ignorance of Defendant's identity is the only reason it is filing this present motion and memorandum. "[T]he identity of the individuals is necessary to move the case forward and without this information, Plaintiff[] would not be able to determine the identities of [the infringers]." *Arista Records, LLC v. Does 1-4*, No. 7-1115, 2007 WL 4178641, at *3 (W.D. Mich. Nov. 20, 2007). This factor, too, weighs in favor of Plaintiff's motion.

5. *Defendant's Minimum Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights from Mass BitTorrent Infringers*

Doe Defendant's privacy and free speech rights are not infringed by Plaintiff's subpoena because Defendant "[does] not have a reasonable expectation of privacy in their internet subscriber information." *Third Degree Films, Inc. v. Does 1-72*, No. 12-14106, 2012 WL

12931709, at *2 (E.D. Mich. Nov. 13, 2012) (citation omitted); *Voltage Pictures v. Does 1-64*, No. 13 -58, 2013 WL 2897977, at *2 (E.D. Tenn. June 13, 2013) ("[T]the subpoenas do not seek information in which the Defendants have a privilege or other privacy interest."); *see also United States v. Carpenter*, 819 F.3d 880, 887 (6th Cir. 2016), *rev'd and remanded on other grounds*, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018) ("[C]ourts have not (yet, at least) extended [Fourth Amendment] protections to the internet analogue to envelope markings, namely the metadata used to route internet communications, like sender and recipient addresses on an email, or IP addresses."). The Sixth Circuit has long held that "computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person." *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001).

Indeed, "courts have consistently held that Internet subscribers do not have a reasonable expectation of privacy in their subscriber information—including name, address, phone number, and email address[.]" *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 247 (N.D. Ill. 2011) (citation omitted). Doe Defendant freely conveyed his or her identifying information to the ISP. *Riding Films, Inc. v. John Does 129-193*, No. 13-46, 2013 WL 3322221, at *5 (S.D. Ohio July 1, 2013) (finding persuasive a sister court's denial of a motion to quash a similar subpoena because "defendants had no reasonable expectation of privacy in the subpoenaed information because the defendants had already shared that information with the ISP in order to obtain internet service") (collecting cases).

Additionally, the subpoena "do[es] not infringe upon a right to anonymous speech because anonymous speech does not enjoy absolute protection under the First Amendment to the Constitution." *Voltage Pictures*, No. 13-58, 2013 WL 2897977 at *2. "Indeed, copyright infringement is not protected by the First Amendment." *Id.* (citing, *inter alia*, *Harper & Row,*

9

*Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985)). "Any First Amendment right to remain anonymous 'must give way to plaintiffs' right to use the judicial process to pursue what appear to be meritorious copy right infringement claims.'" *Id.* (citation omitted). As a result, all factors here favor Plaintiff's motion for leave to take early discovery of Doe Defendant's identity.

      C.  Protective Order

In some BitTorrent cases involving adult content, courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed anonymously. *See*, *e.g.*, *TCYK, LLC*, No. 13-296 (WMC), 2013 WL 4084751 at *1 . Strike 3 respectfully encourages the Court to establish such procedures here, should the Court find it appropriate.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to Defendant's ISP.

Dated: 10/10/2024

                By:   */s/ Dawn M. Sciarrino*
                       Dawn M. Sciarrino, Esq.
                       TN 036649
                       Sciarrino & Shubert, PLLC
                       330 Franklin Road
                       Ste. 135A-133
                       Brentwood, TN 37027-3280
                       T: (202) 256-9551
                       F; (202) 217-3929
                       E-mail: dawn@sciarrinolaw.com

                       /s/ *Jacqueline M. James*
                       Jacqueline M. James, Esq.
                       NY 2384220.
                       The James Law Firm, PLLC
                       445 Hamilton Avenue
                       Suite 1102
                       White Plains, New York 10601
                       T: 914-358-6423
                       F: 914-358-6424
                       E-mail: jjames@jacquelinejameslaw.com

                       *Attorneys for Plaintiff*